**Edward F. HASKELL, Plaintiff,**

v.

**LEVER BROTHERS COMPANY,
Defendant.**

United States District Court
S. D. New York.

June 25, 1965.

Louis A. D'Agosto, and Leo C. Krazinski, New York City, for plaintiff.

Brumbaugh, Free, Graves & Donohue, New York City, for defendant, Eben M. Graves, John F. Neary, Jr., and Norman P. Rousseau, New York City, of counsel.

HERLANDS, District Judge.

This litigation revolves around a product named DOVE (Exh. 4) manufactured by the defendant which the plaintiff claims infringes, directly and contributorily, his mechanical patent for a cake of soap (Exh. 1).

The plaintiff, Edward F. Haskell, a resident of New York City, commenced this action against Lever Brothers Company, a Maine corporation, by the filing of a complaint on December 23, 1960 setting forth three causes of action.

The first cause of action charges direct patent infringement. The second cause of action charges contributory infringement. The third cause of action, alleging the defendant's unjust enrichment, charges the defendant with having wrongfully appropriated on or about May 14, 1957 "and for a long period of time prior and subsequent thereto" plaintiff's trade secret of a cake of soap, the essential ideas and design of which had been disclosed in confidence by the plaintiff to the defendant in December 1957. (Complaint, paragraph "Fifteenth".)

The answer, filed January 16, 1961, disputes all of the plaintiff's material charges. In addition, the answer pleads the following five grounds for the defendant's claim that plaintiff's patent is invalid and void:

(1) Prior to the alleged discovery of the invention patented by the plaintiff or more than one year prior to October 26, 1945 [the filing date of the plaintiff's application for a patent], the plaintiff's alleged invention had been patented or described in various patents and printed publications. (Answer, paragraph "16".)

(2) The plaintiff was not the original or first inventor of the cake of soap claimed in his patent, in that the said cake of soap was known to, used, and offered for sale in the United States prior to the alleged invention thereof by the plaintiff or more than one year prior to October 26, 1945 [the filing date of the plaintiff's application for a patent] by other persons. (Answer, paragraph "17".)

(3) The cake of soap claimed in the plaintiff's patent was described in letters patent of the United States granted upon applications which had been filed in the United States by other persons before the alleged invention thereof by the plaintiff. (Answer, paragraph "18".)

(4) The claims of the plaintiff's patent fail to particularly point out and distinctly claim the subject matter which the plaintiff regarded as his invention. (Answer, paragraph "19".)

(5) The plaintiff's alleged invention did not constitute patentable knowledge or invention in view of the state of the prior art and of what was common knowledge among those skilled in the art prior to the time of the plaintiff's alleged invention of the subject matter of his patent. (Answer, paragraph "20".)

A trial was conducted on January 12, 13, 14, 18, 19, 20 and 21, 1965. Voluminous testimony and numerous exhibits were adduced.[1]

For reasons detailed in this opinion, both in numbered and unnumbered findings of fact and conclusions of law, the court dismisses the complaint on the merits.

The plaintiff filed an application for a patent on October 26, 1945. United

---

1. Page references to the official reporter's transcript of the trial record are indicated in this opinion as "R.p.".

States Letters Patent No. 2,489,639, entitled "Cake of Soap", were issued to him on November 29, 1949 (Exh. 1). A copy of the file wrapper of the said letters patent is Exhibit 2. The plaintiff is, and at all times has been, the sole and exclusive owner of the said letters patent. The cake of soap embodying the material claims of the plaintiff's patent will be referred to as "Haskell soap".

In point of historical fact, the plaintiff never manufactured or sold any soap under his patent nor did anyone else by arrangement with him. (R.p. 246)

The exemplar of a bar of Haskell soap is a glazed clay model (Exh. 49), which the plaintiff sculptured in August 1945 (Exh. 3). Another embodiment of Haskell soap is a bar (Exh. 52) which plaintiff (R.pp. 211, 230) hand-carved out of a cake of BASIS soap (Exh. 77).

After August 1945, the plaintiff attempted to promote his soap by sending letters to four different persons: a well-known public relations counsel; an official of a razor blade company; and two other persons whose identity the plaintiff could not recall. The plaintiff offered to send them materials and models relating to his soap. All of his letters "were returned unopened." (R.p. 58)

Defendant, a Maine corporation doing business within the Southern District of New York, has been and is engaged in the business of manufacturing and selling soaps, detergents, food and other related products in this district and elsewhere in the United States.

As already noted, the application for the plaintiff's patent was filed on October 26, 1945, a few months after he sculptured the model of his soap.

Over two years later, on December 10, 1947, the plaintiff made his first contact with the defendant. At that time, acting on his own initiative and without the defendant's solicitation, the plaintiff sent a letter (Exh. 26) and a memorandum (Exh. V–4th series) to the defendant. The memorandum was denominated as "confidential" while the letter of transmittal concluded with the following sentence: "Please be assured however that seeing this memorandum puts you under no obligation of any sort whatever."

The plaintiff described a cake of soap possessing these features: one surface that is cylindrically concave; an opposite surface is spheroidally convex; and a single continuous curved edge along which the two surfaces would meet and make continuous contact with each other. The plaintiff disclosed to the defendant certain other details (particularly the desirable features) regarding the cake of soap asserted by the plaintiff to be of his design, and also certain types of machinery purporting to be useful in the manufacture of his cakes of soap.

The plaintiff contends that the information so submitted voluntarily by him to the defendant was disclosed in confidence. This alleged confidentiality is sharply disputed by the defendant. But the issue of confidentiality is in no way determinative, indeed it is moot, because (as will be detailed in the course of this opinion) the overwhelming weight of the credible evidence establishes that the defendant returned to the plaintiff all of the writings and data submitted by the plaintiff and the defendant never used, directly or indirectly, any of the plaintiff's writings, data or ideas in the development and manufacture of DOVE.

In the course of the correspondence between the plaintiff and the defendant (Exhs. 26–39), the defendant advised the plaintiff that defendant was not interested in the plaintiff's proposition for a number of reasons recited in the defendant's letters. The primary reason was that, in the opinion of the defendant's production engineers, it would not be feasible (mechanically and otherwise) to attempt to mass-produce at low cost a soap according to the plaintiff's design. See, e. g., R.pp. 100–101, 316, 320–323, 947–948, 993–998.

The defendant therefore rejected the plaintiff's proposal and returned to him all of his writings and data, the terminal date of this correspondence being March 22, 1948.

Because the plaintiff asserts that the defendant thereafter (but at some unspecified time prior to May 14, 1957, the issue date of the defendant's patent) misappropriated the plaintiff's confidential trade secrets, it is necessary at this point of the narrative to describe the circumstances (persuasively proved by the defendant) attending the birth of the allegedly infringing article, the defendant's detergent bar, DOVE.

In December 1951 or January 1952, the defendant considered some modernizing changes in the manufacture and sale of one of its then existing soaps, known as LUX TOILET SOAP, by changing its formulation, physical form, perfuming, packaging and other features. (R.pp. 924 et seq., 1012–1013, 1025). In the course of these efforts, the defendant retained the Illinois Institute of Technology, to have its Institute of Design submit design recommendations for a new edition of LUX (R.pp. 925, 943, 989–991, 1013–1014).

In connection with this project, the defendant's representatives had four or five consultations in Chicago with the personnel of the Institute of Design (R.pp. 963, 985, 1013, 1027, 1030). The experts at the Institute of Design were given a completely free hand. More importantly, the defendant's representatives, as the credible evidence clearly demonstrates, did not give the Institute personnel any ideas, data or suggestions that could, however faintly, be attributed to the plaintiff.

In March or April of 1952, the Institute of Design of the Illinois Institute of Technology independently conceived, originated and designed two models of cakes of soap, exemplified by Exhibits 18–A and 18–B (R.pp. 768, 934–936, 991–992, 1016–1018, 1195–1196).

Thereafter, the defendant modernized LUX (R.pp. 938–939, 988) without employing the models submitted by the Illinois Institute of Technology (R.pp. 937, 1018–1019).

However, the Institute's recommendations and one of its models (Exh. 18–B) were utilized by the defendant in creating an entirely new product: a cake made of synthetic detergent ("Igepon A") and stearic acid plus a cleansing cream to the extent of one-quarter of its ingredients, and structured in accordance with the model, Exhibit 18–B, created by the Institute. (R.pp. 937–939, 967–968, 1018–1019). This is the completely independent genesis of DOVE.

An application for a patent covering the configuration of Exhibit 18–B was filed by Bill J. LeVier and Misch Kohn on March 26, 1954 (Exh. 6). A patent, No. 2,792,349 (Exh. 5), was granted on May 14, 1957. This patent was assigned to the defendant. The shape developed by the Institute of Design of the Illinois Institute of Technology and exemplified by Exhibit 18–B is the shape utilized by the defendant in its manufacture and sale of DOVE.

DOVE was test-marketed in 1955 and nationally distributed in 1956.

On June 18, 1957, the plaintiff's attorney sent the defendant a letter-notice (R.pp. 121–122; Exh. 76) charging infringement of the Haskell patent.[2] The defendant replied on June 26, 1957 (R.pp. 1196–1197; Exh. I–6).

The evidence adduced upon the trial has established convincingly that the defendant has not infringed the plaintiff's patent, directly or contributorily; that the patent under which DOVE has been manufactured and sold was independently conceived and was in no way derived from or inspired by any of the ideas or data that had been disclosed by the plaintiff to the defendant in 1947 and 1948 (R.pp. 340–341, 937, 984–985, 999, 1020–1023, 1154–1156, 1170, 1188, 1195); that DOVE does not utilize or embody the invention disclosed and claimed in the

---

2. The manufacture, use and sale of the defendant's "Baby Dove" are not involved in this action. Pretrial Order, par. 3(a) (19).

The plaintiff makes no claim against the defendant with respect to the apparatus disclosed in plaintiff's Exhibit 36. Pretrial Order, par. 3(a) (20).

plaintiff's letters patent; and that the plaintiff's claim of the defendant's unjust enrichment is without substance.

In a consideration of the patent, as distinguished from the confidential trade secret, aspects of this case, it is critically important to bear in mind that all of the novel attractions and benefits claimed for the Haskell soap allegedly flow from its shape. (See, e. g., plaintiff's testimony. R.pp. 20–25, 33–37, 62.) Its physical configuration or form—not its chemical composition—is said to determine its desirable effects.

The uniqueness of the embodiment of this mechanical, as distinguished from design, patent assertedly arises out of the conjoining of three physical features: a concave surface; a generally opposing convex surface; and a single continuous curved edge common to the two surfaces.

Moreover, the plaintiff contends, a crescent-like ("formfit") shape and profile of a cake of Haskell soap are retained throughout its use, despite the attrition by washing away or dissolution. The permanent concavity of the crescent shape (denominated by plaintiff as "a constancy effector" [R.p. 24]) is, therefore, a quintessential attribute of Haskell soap. The plaintiff concedes that there is no specific degree of concavity that creates the invented concavity which is "the average of all the body's convexity." (R.pp. 42–44).

The plaintiff's attack on DOVE as an infringing article is based on certain physical features of DOVE, as interpreted by the plaintiff. However, the actual evidence when analyzed requires the rejection of the plaintiff's contentions because, stated simply, (1) DOVE does not have a concave surface (which Haskell soap possesses); (2) DOVE does not have a single continuous curved edge common to the two major opposing surfaces (which Haskell soap possesses); (3) DOVE has two major opposing surfaces both of which are convex; (4) DOVE has a flat side or flat panel separating the two major opposing surfaces and encircling the bar and this creates two (not one) continuous curved edges;

and (5) DOVE, when used, does not evolve into the characteristic shape of Haskell soap, assuming that the latter has a permanent characteristic shape.

A consideration of the premises upon which the plaintiff's claims are predicated is necessary to an appreciation of the factual fallacies inherent in the plaintiff's case.

For example, plaintiff has contended that new bars of DOVE have some curvature that are telltale signs of concavity and, hence, that those bars are infringing articles. The overwhelming preponderance of the credible evidence exploded this factual contention. New bars of DOVE do not have any perceptible degree of concavity on any of its surfaces; the two opposing large surfaces are convex. The asserted examples of concavity allegedly reflected in exhibits produced by plaintiff at the trial represent atypical variations of a *de minimis* nature; and furthermore, the hardly noticeable deviations in shape relied upon by plaintiff (assuming arguendo their existence) are credibly explained away by such factors as the age of the bar while on the store shelf, the heat to which the bars may have been subjected and other factors causing slight changes in shape but all unrelated to the defendant's manufacture or to any other activity for which the defendant could remotely be held liable.

Greater stress is placed by the plaintiff upon its primary contention that, while an unused DOVE bar does not initially display a concave, crescent-like ("formfit") surface, it does inevitably assume that allegedly infringing shape in the course of its normal use. See, e. g., R.p. 612. Another paraphrase of the plaintiff's argument is that the innocent, non-infringing shape of an unused bar of DOVE is a transient camouflage of its real shape which is revealed the moment DOVE is used. See e. g., R.pp. 1114–1115. The variations between Haskell soap and DOVE are characterized by the plaintiff as "inessential features * * * called cybernetic errors" (R.pp. 28, 255, 260, 261, 262, 451, 651, 1234) or "noise" (R.pp. 237, 254,

261, 263–264) or "excrescence" (R.p. 652), which disappear through "negative feedback" (R.pp. 262, 648).

This claim of infringement by transfiguration has not been sustained by the evidence. On the contrary, the defendant has refuted the plaintiff's contention that the non-infringing evanescent shape of DOVE is converted by normal attrition into an infringing shape.

■ Where the shape of a patented article constitutes its invented uniqueness and where the shape of an allegedly infringing article is only illusorily and transiently different, the court will penetrate the camouflage and determine the matter on the basis of the substantial equivalence of the two articles.

Whatever may be the merit of infringement by transfiguration as a logical possibility, that possibility has been dispelled by the facts of this case. The plaintiff's theory simply has not been established by the credible proofs nor by plaintiff's more esoteric arguments drawn from the disciplines of cybernetics and ecology (R.pp. 28, 158–161, 164, 254, 255, 262–264, 616–618, 624–629, 631–633, 638, 645, 647, 653, 667–668, 1233–1234).

In his deposition of March 20, 1961 (p. 154 thereof) the plaintiff testified that "one-sixth or so" of a DOVE cake would have to be worn away before it came within the allegedly novel aspects of his invention (R.pp. 238, 240). Upon the trial, the plaintiff reiterated the one-sixth figure (R.p. 264–265) but also testified that two-thirds of the volume of a DOVE bar would have to be worn away before it achieves the allegedly infringing configuration (R.pp. 244, 276–279; see also R.pp. 440–443).

It is important, at this juncture, to point out (and the court so finds and concludes) that a cake of natural or synthetic soap is a staple article or commodity of commerce and that even under the plaintiff's theory (as summarized in the immediately preceding paragraph) it is suitable for substantial non-infringing use before it ever attains an infringing status.

In attempting to support his contention, the plaintiff presented testimony about certain experiments and also various exhibits consisting of worn-down bars of DOVE and Haskell soap.

In turn, defendant adduced testimony about the tests and surveys conducted by it and introduced numerous worn-down bars of DOVE, all of which contradicted the inferences urged by plaintiff.

The court has availed itself of the ample opportunity (see, e. g., R.p. 802) to scrutinize each of these exhibits and to evaluate the related testimony about the experiments, tests and surveys conducted by the parties.

■ The overwhelming weight of the credible evidence requires the findings and conclusions that the plaintiff's contention is without merit and that, in fact, neither of DOVE's major surfaces comes to possess a concave or crescent shape like one of the surfaces of Haskell soap. The convex surface of DOVE that the plaintiff contends becomes concave with use does not, in fact, assume the shape asserted by the plaintiff. On the contrary, washed-down cakes of DOVE do not assume any particular average or typical surface shape but, depending upon variables commonly involved in actual use, have random shapes (R.pp. 747, 750). In the great majority of such cakes of washed-down DOVE examined by the court, the surface that the plaintiff claims becomes concave actually assumes or tends to assume a horizontal or flat surface, after its convexity has worn down.

The tests and surveys conducted by the defendant and the related testimony offered by it have strongly impressed the court as more reliable and more plausible than the cognate proofs submitted in behalf of the plaintiff.

The court completely rejects the plaintiff's contentions and claims.

*Additional Findings Relating To Plaintiff's Patent Claims*

At the threshold, it is essential to point out the restricted nature of plaintiff's patent claims.

1. The plaintiff's patent claims embody only those shapes of soaps illustrated by Figures 1, 2, 3 and 4 of the drawings of patent No. 2,489,639 (Exh. 1). The subject matter illustrated by Figures 5 through 11 of said patent is not included within the patent claims. (Pretrial Order, par. 3a(4)).

2. The plaintiff's patent is directed to a bar or cake of soap having on one side a concave surface which is generally cylindrical in curvature, on the opposite side a convex surface which is generally spheroidal in curvature, and a contact between the surfaces along their edges to form a single continuous curved edge. (Pretrial Order, par. 3a(5)).

3. A material limitation to the plaintiff's patent claims is the language in each calling for the said two surfaces of the cake to meet "along a single continuous curved edge." (Pretrial Order, par. 3a(6); Plaintiff's Exhibit 2, p. 43).

*Additional Findings Establishing That There Is No Infringement*

4. The DOVE bar, as manufactured and sold by the defendant, has three surfaces: (1) a cylindrical convex surface; (2) a spheroidally convex surface; and (3) a third surface extending completely around the DOVE bar and separating the cylindrically convex surface from the spheroidally convex surface. This third surface forms two edges, one with each of the two convex surfaces. (Pretrial Order, par. 3a(7); Plaintiff's Exhibits 4 and 71; Haskell, R.p. 221–222, 276, 1203; Cassidy, R.p. 607–608, 670–671; Lax, R.p. 288–293; Murphy, R.p. 874–875).

5. The DOVE bar, as manufactured and sold by the defendant, does not have a cylindrically concave surface. Plaintiff's Exhibits 4 and 71; Haskell, R.p. 222; Lax, R.p. 288–293; Murphy, R.p. 874–875; Cassidy, R.p. 607–608).

6. The shape of the DOVE bar, as manufactured and sold by the defendant, does not consist of two surfaces joined along a single continuous curved edge as taught in the patent in suit and called for in the claims therein. (Plaintiff's Exhibits 4 and 71; Pretrial Order, par. 3a(4)–(6); Haskell, R.p. 221–222, 1203; Lax, R.p. 291–292; Cassidy, R.p. 670–671; Murphy, R.p. 874–875).

7. The shape of the DOVE bar, as manufactured and sold by the defendant, does not consist of a cylindrically concave surface joined to a spheroidally convex surface along a single continuous curved edge. (Plaintiff's Exhibits 4 and 71; Pretrial Order, par. 3a(4)–(6); Haskell, R.p. 221–222, 276, 1203; Cassidy, R.p. 607–608, 670–671; Lax, R.p. 288–293; Murphy, R.p. 874–875).

8. a. The dies utilized by the defendant in the manufacture of DOVE soap are constructed so as not to form a concave surface on either side of the DOVE bar. (Murphy, R.p. 877–878; Exhibits D, E and F).

b. The die which stamps the cylindrical convex surface and which is utilized by the defendant in the manufacture of DOVE soap is constructed so as to have a straight line at the apex of its (the die's) cylindrically concave surface. (Murphy, R.p. 877; Exhibit D).

c. Bars of DOVE which, because of manufacturing malfunction, depart from a cylindrical convex surface so that the convex surface becomes visibly concave are returned to scrap. (Murphy, R.p. 893).

9. The DOVE bar, as manufactured and sold by the defendant, is a staple article or commodity of commerce. (Defendant's Exhibits E–1, F–1, J–1; Kelly, R.p. 745–747; DeLitta, R.p. 825–829).

10. The DOVE bar, as manufactured and sold by the defendant, is suitable for substantial non-infringing use. (Defendant's Exhibits E–1, F–1, J–1; Kelly, R.p. 745–747; DeLitta, R.p. 825–829; Haskell, R.p. 276–277).

11. The DOVE bar as manufactured and sold by the defendant, when used by the public, does not develop into a worn-down bar having a generally cylindrical concave surface and having a single continuous curved edge. (Defendant's Exhibits E–1, F–1, J–1; Kelly, R.p. 745–

747; DeLitta, R.p. 825–829; Haskell, R. p. 276–277).

12. Defendant's RGP (Research Guidance Panel) survey establishes that the DOVE bar as manufactured and sold by defendant, when "use(d) in the usual manner", does not develop into a worn-down bar having a single continuous curved edge. (Defendant's Exhibits E–1, F–1, J–1; Kelly, R.p. 735, 745–747; De-Litta, R.p. 822, 825–829; Haskell, R.p. 276–277).

13. A DOVE bar worn down to a "saddle" does not exhibit a generally cylindrical concave surface. (Plaintiff's Exhibit 2; Defendant's Exhibit E–1; Pretrial Order, par. 3a(4); Kelly, R.p. 745–747; Haskell, R.p. 276–277).

14. Defendant's Exhibit E–1 comprises 116 pairs of soap bars which were supplied to 116 members of the public for use in their homes. (DeLitta, R.p. 813).

15. One bar of each pair was a production bar of bath size DOVE, and the other bar of each pair was a bar of soap made of LUX toilet soap stock (Kelly, R.p. 735–738) and pressed on the MOUNTAIN HEATHER dies (Defendant's Exhibit H–1), into the shape and configuration of Exhibit J–4.

16. The panelists received no instructions from the Lever Brothers representatives when the soap bars were delivered to them other than that the bars were to be used in the normal manner and that they were to be used until they were consumed to one-half or one-third of their original size. (DeLitta, R.p. 819, 822, 825, 826; Defendant's Exhibit F–1).

17. The 116 members of the public to whom the soap bars were delivered for use in the "usual manner" were not informed of the pendency of this litigation until after the bars had been returned to the Lever Brothers' representative after use. (DeLitta, R.p. 814; Defendant's Exhibit F–1).

18. Examination of the 116 DOVE bars returned by the panelists establishes that the configuration attained by these bars in use was random and exhibited no consistent pattern. (Kelly, R.p. 745–747; Defendant's Exhibit E–1).

19. The method of distribution and the utilization of church membership personnel as panelists was in accordance with Lever Brothers' customary practice in conducting consumer surveys and resulted in a fair and reliable sampling (DeLitta, R.p. 804–807; Kelly, R.p. 735).

20. The advertising program adopted by Lever Brothers to promote the sale of the DOVE bar was not intended to and did not encourage or induce the public to use the DOVE bar in any one particular manner (Scully, R.p. 1047–1049; Heekin, R.p. 848; Exhibits 40, 62–70B and K–1—U–1).

21. The principal theme of the advertising utilized by Lever Brothers in connection with the sale of DOVE was the fact that DOVE "creams your skin while you wash". The shape of the DOVE bar was not a substantial feature of the advertising (Heekin, R.p. 843, 868; Scully, R.p. 1050; Exhibits 40, 62–70B and K–1—U–1).

■ *Findings of Fact Establishing That The Haskell Patent Is Invalid*

A. Invalidity Under 35 U.S.C. § 102(a) (Anticipation) And § 102(b) (Statutory Bar)

22. The earliest date which the plaintiff proved as the date of his invention is August 24, 1945 (Lax, R.p. 285; Haskell, R.p. 28; Plaintiff's Exhibit 3).

23. The patent in suit was issued November 29, 1949 on an application filed October 26, 1945. The two claims thereof read as follows:

1. A cake of soap having concave curvature on the surface presented to the user and having spheroidal curvature on the other surface thereof, said concave curvature being generally cylindrical, both said surfaces making contact with one another along a single continuous curved edge, whereby wear of said soap maintains said edge substantially unaltered in form.

2. A cake of soap suitable for engaging the external bodily contours

of the person, characterized in that one surface of said cake is formed with a concave curvature extending substantially to the extreme edges of the cake, said curvature being generally cylindrical about an axis normal to the longitudinal dimension of said cake, and also characterized in that another surface of said cake is generally spheroidal in contour, so as to fit the hand and said two surfaces meet along a single continuous curved edge.

(Plaintiff's Exhibit 1).

24. The prior art patents disclose cakes of soap having surfaces with concave curvatures and convex curvatures. (Pretrial Order, par. 3a(18)).

25. a. Bars of soap having the configuration of the MOUNTAIN HEATHER soap bar (Defendant's Exhibit J–3) were manufactured by the Hewitt Soap Company of Dayton, Ohio, and sold by the Hewitt Soap Company (in bulk and in three-bar boxes) to Daggett & Ramsdell and, in turn, were sold by Daggett & Ramsdell to the public during the years 1942, 1943, 1944 and 1945. (Pretrial Order, par. 3a(9); Bradley Deposition [Defendant's Exhibit O–3, p. 18]; Defendant's Exhibits P–3, R–3, S–3, F–5, G–5, H–5; Hall, R.p. 911).

b. Defendant's Exhibits J–3 is the configuration of a MOUNTAIN HEATHER soap bar and was pressed on the dies identified as number 1669, Defendant's Exhibit H–1, at an inter-party demonstration on November 14, 1962. (Pretrial Order, par. 3a(8)).

c. The MOUNTAIN HEATHER soap bar having the configuration of Defendant's Exhibit J–3 was described and disclosed in various printed publications during 1942 and 1943. (Pretrial Stipulation, par. 3(a) (10); Defendant's Exhibits Q–3 R–3, S–3, T–3, U–3, V–3, P–5, G–5, H–5; Hall, R.p. 911).

d. The shape of the MOUNTAIN HEATHER bar having the configuration of Defendant's Exhibit J–3 consists of a spheroidal surface on one side meeting a generally cylindrical concave surface on the other side along a single continuous curved edge. (Cassidy, R.p. 652; Haskell, R.p. 1199–1203; Kelly, R.p. 748–749; Visual Aid Chart, Defendant's Exhibit Y–2).

e. The shape of the MOUNTAIN HEATHER bar having the configuration of Defendant's Exhibit J–3 consists of a surface on one side having a generally cylindrical concave curvature extending substantially to the extreme edges of the cake about an axis normal to the longitudinal dimension of said cake and another service on the opposite side generally spheroidal in contour, which two surfaces meet along a single continuous curved edge. (Cassidy, R.p. 652, 677; Haskell, R.p. 1199–1203; Kelly, R.p. 748–749; Visual Aid Chart, Defendant's Exhibit Y–2).

f. The shape of the MOUNTAIN HEATHER bar having the configuration of the Defendant's Exhibit J–3, with wear, maintains its single continuous curved edge substantially unaltered in form (Exhibit E–1; Cassidy, R.p. 651–654, 677; Kelly, R.p. 749–750; Visual Aid Chart, Defendant's Exhibit Y–2).

g. The shape of the MOUNTAIN HEATHER bar having the configuration of the Defendant's Exhibit J–3 has a surface generally spheroidal in contour so as to fit the hand. (Cassidy, R.p. 651–654; Haskell, R.p. 1199–1203).

26. a. Bars of soap having the configuration of the BLUE GRASS soap bar, Defendant's Exhibit J–4, were manufactured and sold by the Hewitt Soap Company of Dayton, Ohio, to the Elizabeth Arden Company of New York, New York, during 1941, 1942, 1943, 1944 and 1945. (Pretrial Order, par. 3(a) (13); Defendant's Exhibit I–4).

b. Defendant's Exhibit J–4, the configuration of a bar of soap called BLUE GRASS, was pressed in the original dies at an inter-party demonstration on November 14, 1962. (Pretrial Order, par. 3a(11)).

c. The BLUE GRASS soap bar having the configuration of Defendant's Exhibit J–4 has been sold since 1936 by the

Elizabeth Arden Company of New York, New York. (Pretrial Order, par. 3(a) (12); Defendant's Exhibit I–4).

d. The shape of the BLUE GRASS bar having the configuration of Defendant's Exhibit J–4 consists of a spheroidal surface on one side meeting a generally cylindrical concave surface on the other side along a single continuous curved edge. (Cassidy, R.p. 649, 677; Defendant's Exhibit J–4). (See Visual Aid Chart, Exhibit E–4).

e. The shape of the BLUE GRASS bar having the configuration of Defendant's Exhibit J–4 consists of a surface on one side having a generally cylindrical concave curvature extending substantially to the extreme edges of the cake about an axis normal to the longitudinal dimension of said cake and another surface on the opposite side generally spheroidal in contour, which two surfaces meet along a single continuous curved edge. (Cassidy, R.p. 649, 677; Defendant's Exhibit J–4). (See Visual Aid Chart, Exhibit E–4).

f. The shape of the BLUE GRASS bar having the configuration of Defendant's Exhibit J–4 has a surface generally spheroidal in contour so as to fit the hand. (Cassidy, R.p. 649; Defendant's Exhibit J–4).

27. a. Defendant's Exhibit Q–4 comprises the configurations of bars of soap called DELETTREZ BUTTERMILK SKIN FOOD TOILET SOAP, I. MAGNIN & COMPANY ROSE GERANIUM SOAP, and FREDERICK & NELSON ROSE GERANIUM CREAM SOAP, and were pressed on the original dies at an inter-party demonstration on November 14, 1962. (Pretrial Order, par. 3a(16)).

b. The bars of soap called DELETTREZ BUTTERMILK SKIN FOOD TOILET SOAP, I. MAGNIN & COMPANY ROSE GERANIUM SOAP and FREDERICK & NELSON ROSE GERANIUM CREAM SOAP, having the configuration of Defendant's Exhibit Q–4, were manufactured and sold by the Hewitt Soap Company of Dayton, Ohio, during the years 1936 to 1945, inclusive. (Pretrial Order, par. 3a(17)).

c. The shape of the I. MAGNIN bar having the configuration of Defendant's Exhibit Q–4 consists of a spheroidal surface on one side meeting a generally cylindrical concave surface on the other side along a single continuous curved edge. (Defendant's Exhibit Q–4). (See Visual Aid Chart, Exhibit M–4).

d. The shape of the I. MAGNIN bar having the configuration of Defendant's Exhibit Q–4 consists of a surface on one side having a generally cylindrical concave curvature extending substantially to the extreme edges of the bar about an axis normal to the longitudinal dimension of said bar and another surface on the opposite side generally spheroidal in contour, which two surfaces meet along a single continuous curved edge. (Defendant's Exhibit Q–4). (See Visual Aid Chart, Exhibit M–4).

e. The shape of the I. MAGNIN bar having the configuration of Defendant's Exhibit Q–4 has a surface generally spheroidal in contour so as to fit the hand. (Defendant's Exhibit Q–4). (See Visual Aid Chart, Exhibit M–4).

28. a. Defendant's Exhibit C–4 is the configuration of a bar of soap called SNUFF marketed by Schiaparelli, and was pressed on the original dies at an inter-party demonstration on November 14, 1962. (Pretrial Order, par. 3a(14)).

b. Bars of soap having the configuration of SNUFF soap bar, Defendant's Exhibit C–4, were manufactured as early as May, 1945 and subsequently sold by the Hewitt Soap Company of Dayton, Ohio. (Pretrial Order, par. 3a(15)).

c. The shape of the SNUFF bar having the configuration of Defendant's Exhibit C–4 consists of a spheroidal surface on one side meeting a generally cylindrical surface on the other side along a single continuous curved edge. (Haskell, R.p. 1201; Defendant's Exhibit C–4). (See Visual Aid Chart, Exhibit Y–3).

d. The shape of the SNUFF bar having the configuration of Defendant's Exhibit C–4 consists of a surface on one side having a generally cylindrical con-

cave curvature extending substantially to the extreme edges of the cake about an axis normal to the longitudinal dimension of said cake and another surface on the other side generally spheroidal in contour, which two surfaces meet along a single continuous curved edge. (Defendant's Exhibit C–4). (See Visual Aid Chart, Exhibit Y–3).

e. The shape of the SNUFF bar having the configuration of Defendant's Exhibit C–4 has a surface generally spheroidal in contour so as to fit the hand. (Defendant's Exhibit C–4). (See Visual Aid Chart, Exhibit Y–3).

### B. Invalidity Under 35 U.S.C. § 103 (Obviousness)

29. a. The Italian patent No. 288,-117, issued to Calosi et al. on August 27, 1931, discloses the shape of a bar of soap formed with a generally spheroidal surface on one side meeting a concave surface on the other side along a single continuous curved edge. (Defendant's Exhibits D–2 and E–2).

b. The Italian patent No. 288,117 discloses a bar of soap especially suitable for a good grip by the hand on the cake and has a concave surface capable of conforming to the convex surface of the head. (Defendant's Exhibits D–2 and E–2).

c. It would have been obvious to one skilled in the art, at the time that the subject matter of the Haskell patent was conceived, to make the Calosi bar fit other convex surfaces of the body, in view of the availability on the market of the MOUNTAIN HEATHER, ELIZABETH ARDEN, SNUFF and I. MAGNIN bars of soap. (Defendant's Exhibits J–3, J–4, C–4 and Q–4).

d. The Calosi patent No. 288,117 was not cited by the Patent Office during the prosecution of the application which resulted in the issuance of the Haskell patent. (Plaintiff's Exhibits 1 and 2).

■ *Additional Findings of Fact Establishing That There Is No Unjust Enrichment*

### A. Because of the Doctrine of Merger

30. The patent in suit issued November 29, 1949 on an application filed October 26, 1945. (Plaintiff's Exhibit 1).

31. The shape of defendant's DOVE bar was not designed until 1952,—two years after patent issued. (Burkhart, R.p. 926; Barnett, R.p. 1011; Mich Kohn Deposition, pp. 14–15; Plaintiff's Exhibits 18–B, 4).

32. Defendant's DOVE bar was first manufactured and sold by the defendant in 1955,—five years after patent issued. (Burkhart, R.p. 939; Scully, R.p. 1058, 1063).

33. a. The bar of soap disclosed in plaintiff's memorandum, Exhibits 27 and V–4, which was sent to the defendant with the plaintiff's letter dated December 10, 1947 was disclosed in the plaintiff's patent No. 2,489,639. (Plaintiff's Exhibit 1; Pretrial Order, par. 3(b) (7); see Visual Aid Charts, Exhibits B–5, C–5 and D–5, which include portions of the Haskell Deposition, pp. 579–594).

b. All matters of substance disclosed in the plaintiff's memorandum (Exhibits 27 and V–4) were disclosed to the public on November 29, 1949 when the plaintiff's patent No. 2,489,639 issued. (Plaintiff's Exhibit 1; see Visual Aid Charts, Exhibits B–5, C–5, D–5).

34. The picture of the bar of soap on unnumbered page 2 of the plaintiff's memorandum (Exhibits 27 and V–4) is disclosed in Figures 1 through 4 of the patent in suit. (Plaintiff's Exhibit 1; see Visual Aid Chart, Exhibit B–5).

35. The disclosure on unnumbered page 2 of the plaintiff's said memorandum (Exhibits 27 and V–4) that a cake of soap should be designed to save fat is disclosed in column 2, lines 9–17 in the patent in suit. (Plaintiff's Exhibit 1; see Visual Aid Chart, Exhibit B–5).

36. The disclosure on unnumbered page 2 of the plaintiff's said memorandum (Exhibits 27 and V–4) that a cake of soap should be designed to fit the hand and body from start to finish is disclosed in column 2, lines 18–22 of the patent

in suit. (Plaintiff's Exhibit 1; see Visual Aid Chart, Exhibit B–5).

37. The disclosure on unnumbered page 2 of the plaintiff's said memorandum that a cake of soap should be designed to dry quickly is disclosed in column 2, lines 15–16 of the patent in suit. (Plaintiff's Exhibit 1; see Visual Aid Chart, Exhibit C–5).

38. The first paragraph on p. 5 of the plaintiff's said memorandum, starting with "*Rectangular*" and continuing down through "ones. (see Figures).", line 11 on page 5, describes well-known prior art bars, and does not disclose confidential subject matter. (See Visual Aid Chart, Exhibit C–5).

39. The subject matter of the sentence starting with "Our correct", on line 12 of page 5 of the plaintiff's said memorandum is disclosed in column 4, lines 64–71 and Figures 1 and 2 of the patent in suit. (Plaintiff's Exhibit 1; see Visual Aid Chart, Exhibit C–5).

40. The two sentences starting with "This edge's" in line 13 on page 5, through "angles" in line 17 of the plaintiff's said memorandum, contain statements which either are incorrect or meaningless. These sentences therefore do not disclose confidential subject matter. (See Visual Aid Chart, Exhibit C–5).

41. The cylindrical surface meets the spheroidal surface of the Haskell bar at a single edge thereby forming an angle, contrary to the statement on page 5, lines 16 and 17, of plaintiff's said memorandum. (See Visual Aid Chart, Exhibit C–5).

42. The material discussed on page 5 of the plaintiff's said memorandum, starting with "And, because" in line 17, through "below.", in lines 23–24, is disclosed in column 1, lines 4–9 and column 3, lines 28–42 of the patent in suit. (Plaintiff's Exhibit 1; see Visual Aid Chart, Exhibit C–5).

43. The sketch in the margin of page 5 of the plaintiff's said memorandum shows a prior art bar and is not the subject matter of a confidential disclosure. (See Visual Aid Chart, Exhibit C–5).

44. The sketch in the margin on page 7 of the plaintiff's said memorandum disclosed the Haskell bar with its cylindrically concave surface and spheroidally convex surface as shown in Figures 1 through 4 of the patent in suit. (Plaintiff's Exhibit 1; see Visual Aid Chart, Exhibit D–5).

45. The paragraph under the heading "*Drying*", on page 6 of the plaintiff's said memorandum discusses prior art bars and does not disclose confidential subject matter. This subject matter is also disclosed in column 2, lines 9–27 and column 4, lines 36–42 of the patent in suit. (Plaintiff's Exhibit 1; see Visual Aid Chart, Exhibit C–5).

46. In the second paragraph on page 6 of the plaintiff's said memorandum, the subject matter starting with "This important" and ending with "*the body.*" is disclosed in column 1, lines 34–44 of the patent in suit. (Plaintiff's Exhibit 1; see Visual Aid Chart, Exhibit D–5).

47. In the second paragraph on page 6 of the plaintiff's said memorandum, the subject matter starting with "it" and ending with "*the cake.*" in the first paragraph on page 7, is disclosed in column 3, lines 28–42 of the patent in suit. (Plaintiff's Exhibit 1; see Visual Aid Chart, Exhibit D–5).

48. In the first paragraph on page 7 of the plaintiff's said memorandum, the subject matter starting with "Consequently" (line 3) and ending with "(See Figure)." (line 9), is disclosed in column 4, lines 36–42, and column 2, lines 9–17, of the patent in suit. (Plaintiff's Exhibit 1, see Visual Aid Chart, Exhibit D–5).

49. The subject matter starting with "Corrugated" on page 7, line 9 of the plaintiff's said memorandum, through the bottom of page 8, is subject matter which does not contain confidential information. (See Visual Aid Chart, Exhibit D–5).

### B. The Subject Matter of Plaintiff's Memorandum Is Not Novel

50. The plaintiff's memorandum (Exhibits 27 and V–4) discloses a bar of soap having a generally spheroidal surface on

one side meeting a concave surface on the other side along a single edge. (See Visual Aid Charts, Exhibits B–5, C–5 and D–5).

51. The shape of the MOUNTAIN HEATHER bar, Exhibit J–3, consists of a generally spheroidal surface on one side meeting a concave surface on the other side along a single edge. (See Visual Aid Charts, Exhibits Y–2 and E–5).

52. The MOUNTAIN HEATHER bar was known to the defendant at least as early as June 1942. (Hall, R.p. 910, 911; Exhibits F–5, G–5 and H–5).

### C. No Confidential Relationship Existed Between the Plaintiff and the Defendant

53. The plaintiff in his covering letter, dated December 10, 1947, with which he sent the memorandum in suit to the defendant stated that the seeing of the memorandum by the defendant put the defendant under no obligation concerning the plaintiff's alleged idea (Exhibit 26).

### D. The Defendant Has Not Utilized the Subject Matter of Plaintiff's Memorandum

54. The plaintiff's memorandum discloses a bar of soap having a generally spheroidal surface on one side meeting a concave surface on the other side along a single edge (Exhibits 27 and V–4).

55. The shape of the DOVE bar as manufactured and sold by the defendant does not have a concave surface as disclosed in the plaintiff's said memorandum. (Plaintiff's Exhibits 4 and 71; Haskell, R.p. 222).

56. The shape of the DOVE bar, as manufactured and sold by the defendant, does not have a single edge formed between the concave surface and a spheroidal convex surface as disclosed in the plaintiff's said memorandum. (Plaintiff's Exhibits 4 and 71; Haskell, R.p. 221 and 1203; Cassidy, R.p. 607–608, 670–671; Lax, R.p. 288–293; Murphy, R.p. 874–875).

### E. The Shape of the Defendant's DOVE Bar Was Independently Developed

by the Institute of Design of the Illinois Institute of Technology

57. In 1952, personnel of the defendant engaged the Institute of Design of the Illinois Institute of Technology to develop new shapes for soap bars. (Burkhart, R.p. 925, 926, 932–934; Barnett, R.p. 1012, 1013; Exhibits J–5, K–5, L–5, M–5, N–5, P–5, Q–5, R–5, S–5, U–5).

58. No instructions as to the shape to be developed were given to the Institute of Design of the Illinois Institute of Technology by the defendant's personnel. (Burkhart, R.p. 943; Barnett, R.p. 1017; Misch Kohn Deposition [Defendant's Exhibit W–5, p. 14]).

59. Among the shapes of soap bars developed by the Institute of Design of the Illinois Institute of Technology was a shape exemplified by Exhibit 18–B. (Burkhart, R.p. 935; Barnett, R.p. 1016).

60. The shape exemplified by Exhibit 18–B was made the subject of a patent application which was assigned to the defendant. (Plaintiff's Exhibit 5).

61. The shape developed by the Institute of Design of the Illinois Institute of Technology exemplified by Exhibit 18–B is the shape utilized by the defendant in the manufacture and sale of its DOVE bar. (Burkhart, R.p. 937; Barnett, R.p. 1018).

### CONCLUSIONS OF LAW

1. United States Letters Patent No. 2,489,639 in suit are invalid and void as anticipated under 35 U.S.C. § 102(a).

2. United States Letters Patent No. 2,489,639 in suit are invalid and void by reasons of a statutory bar under 35 U.S. C. § 102(b).

3. United States Letters Patent No. 2,489,639 in suit are invalid and void as lacking invention under 35 U.S.C. § 103.

4. The DOVE bar does not infringe claims 1 and 2 of the patent in suit in that it does not have a cylindrically concave surface.

5. The DOVE bar does not infringe claims 1 and 2 of the patent in suit in that it does not have a single continuous

curved edge formed by the juncture of a cylindrically concave surface and a spheroidal surface.

 6. The DOVE bar is a staple article of commerce suitable for substantial non-infringing use; and the defendant is not guilty of contributory infringement under 35 U.S.C. § 271(c).

7. The defendant does not actively induce infringement of the patent in suit and is not liable as an infringer under 35 U.S.C. § 271(b).

8. The used bars of DOVE soap do not infringe either claims 1 or 2 of the patent in suit and, in the absence of any direct infringement, the defendant is not guilty of infringement or contributory infringement under either 35 U.S.C. § 271(b) or 35 U.S.C. § 271(c).

9. In view of the fact that all of the assertedly novel ideas contained in the plaintiff's memorandum to the defendant were disclosed in the plaintiff's patent in suit, which issued prior to the defendant's accused activities conceiving DOVE, any trade-secret rights which the plaintiff might have had are merged with and cannot exceed his patent rights as of the date of the patent's issuance on November 29, 1949; and the plaintiff is not entitled to recover damages under the charge of unjust enrichment.

10. In view of the fact that the unsolicited ideas contained in the plaintiff's memorandum were not novel and were known to the defendant at the time of plaintiff's disclosures, the plaintiff is not entitled to recover damages under the charge of unjust enrichment.

11. In view of the fact that the DOVE bar does not have a concave surface as specifically called for in the plaintiff's memorandum to the defendant, the defendant does not use, and has not disclosed, the configuration then proposed by the plaintiff; and the plaintiff is not entitled to recover damages under the charge of unjust enrichment.

12. In view of the fact that the DOVE bar has a double edge or two edges and not a single edge as specifically called for in the plaintiff's memorandum to the defendant, the defendant does not use, and has not disclosed, the configuration proposed by the plaintiff; and the plaintiff is not entitled to recover damages under the charge of unjust enrichment.

13. In view of the fact that the shape of DOVE was conceived, originated and developed by an independent source without direction or supervision by the defendant, and in view of the fact that the defendant purchased the rights to the shape of DOVE from such source, the plaintiff is not entitled to recover damages under the charge of unjust enrichment.

14. The complaint should be, and hereby is, dismissed with respect to each of the three causes of action purported to be set forth therein, with costs to be taxed by the clerk.

15. Judgment in accordance with foregoing findings and conclusions shall be settled upon notice.

